Mezinev v Donald Smith & Co.

2026 NY Slip Op 02209

April 14, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Velin Mezinev, Plaintiff-Appellant,

v

Donald Smith & Co., et al., Defendants-Respondents.

Decided and Entered: April 14, 2026

Index No. 161367/17|Appeal No. 6340|Case No. 2025-03208|

Before: Moulton, J.P., Friedman, González, Shulman, Rosado, JJ.

Kaiser Saurborn & Mair, P.C., New York (Daniel J. Kaiser of counsel), for appellant.

Rottenberg Lipman Rich, P.C., New York (Harry W. Lipman of counsel), for respondents.

[*1]

Order, Supreme Court, New York County (Verna L. Saunders, J.), entered March 7, 2025, which, to the extent appealed as limited by the briefs, granted defendants' motion for summary judgment dismissing plaintiff's claims for discrimination on the basis of familial status under the New York State Human Rights Laws (State HRL), caregiver status under the New York City Human Rights Law (City HRL), and national origin under both HRLs, unanimously modified, on the law, to deny the motion with respect to the causes of action for familial status discrimination under the State HRL (first cause of action) and caregiver status under the City HRL (third cause of action), and those causes of action reinstated, and otherwise affirmed, without costs.

Initially, the Dead Man's Statute (CPLR 4519) does not bar consideration of plaintiff's testimony about statements by Donald Smith, the late co-chief investment officer of plaintiff's former employer, defendant Donald Smith & Co. (DSC), as the testimony was not the only evidence presented to defeat summary judgment (see Matter of Ingberman [Colon], 194 AD3d 410, 411 [1st Dept 2021]; Phillips v Kantor & Co., 31 NY2d 307, 315 [1972]).

Nevertheless, even considering Smith's statements, plaintiff fails to demonstrate the existence of genuine issues of fact as to whether defendants' proffered reasons for terminating him—his poor analytical and communication skills and the relatively poor performance of his portfolio—were pretexts for national origin discrimination, or whether his national origin was a motivating factor for his termination (see Hamburg v New York Univ. Sch. of Medicine, 155 AD3d 66, 73 & n 7 [1st Dept 2017]). Smith's seven isolated and undated comments about plaintiff's Bulgarian national origin over the course of plaintiff's 12-year tenure are legally insufficient to suggest discrimination (see Sicola v Cushman & Wakefield, Inc., 210 AD3d 449, 451 [1st Dept 2022], lv denied 39 NY3d 916 [2023]). The comments that plaintiff points to as discriminatory constitute a small number of stray remarks regarding plaintiff's national origin, and none of those remarks concerned an employment decision (see Melman v Montefiore Med. Ctr., 98 AD3d 107, 126 [1st Dept 2012]; see also Godbolt v Verizon New York Inc., 115 AD3d 493, 494 [1st Dept 2014], lv denied 24 NY3d 901 [2014]). Plaintiff also fails to demonstrate that he and his purported comparator, Jonathan Hartsel, were "similarly situated in all material respects" (Etienne v MTA N.Y. City Tr. Auth., 223 AD3d 612, 612 [1st Dept 2024] [internal quotation marks omitted]). On the contrary, Hartsel managed a significantly larger portfolio, which earned more for the firm as an annual average, and had different job responsibilities from plaintiff.

[*2]

However, the record presents issues of fact as to plaintiff's familial and caregiver status causes of action under the State HRL, which prohibits discrimination based on "familial status," including against "any person who . . . has a child or is in the process of securing legal custody" of a child (Executive Law §§ 292[26][a], 296[1][a]), and the City HRL, which prohibits discrimination based on "caregiver status" (Administrative Code of City of NY § 8-107[1][a]). On July 11, 2016, the day before DSC's decision to put plaintiff on probation, plaintiff attended a hearing in a custody proceeding regarding his daughter. According to plaintiff, Richard Greenberg, DSC's co-chief investment officer, questioned whether plaintiff "was sure [he wanted] to do this" (that is, to participate in custody proceedings) and encouraged him to "[g]ive up on [his] daughter." In addition, at plaintiff's year-end review meeting, which plaintiff recorded, Greenberg gave him negative feedback about his job performance and stated, "I just want to know . . . is your heart still in it, you know? . . . I mean you've got all these things going on."

Additionally, in January 2017, Jane Park, the firm's director of business development and client relations, authored a memo for Smith and Greenberg that discussed whether to disclose to firm clients that a more junior investment analyst had received firm equity while plaintiff had not. The memo posited telling clients, as one option, that plaintiff "is going through some personal issues which make[] the current timing less than ideal for ownership disbursement." Park testified at her deposition that she was referring to the fact that plaintiff was "distracted" because of his divorce and custody fight. The memo was edited by Hartsel, who by then had been promoted to portfolio manager/analyst and gave Greenberg input on the decision to terminate plaintiff. Evidence that plaintiff's portfolio improved in the last several years of his tenure, and that his compensation correspondingly increased, arguably undermines defendants' assertion that they terminated him because of the poor performance of his portfolio.

Taken together, the evidence could lead a reasonable factfinder to conclude that defendants' proffered reasons for denying plaintiff equity and ultimately terminating him were "false, misleading, or incomplete," and that plaintiff was, in fact, terminated on the basis of his familial or caregiver status (Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 35-36 [1st Dept 2011], lv denied 18 NY3d 811 [2012]; see also Friedman v Bloomberg, L.P., 230 AD3d 1060, 1061-1062 [1st Dept 2024]). Although the record presents some evidence that defendants terminated plaintiff for legitimate reasons, it it is not definitive. A court may not determine credibility or resolve factual issues on a motion for summary judgment (see Hammond v State, 157 AD2d 391, 393 [1st Dept 1990]).

[*3]

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 14, 2026